`

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| MARCIA MARSHALL | ) | Case No. 1:16-cv-2596 |
| *on behalf of* D.L.M., | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

## I.     Introduction

Plaintiff Marcia Marshall seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying an application she filed on behalf of her minor child ("D.L.M.") for supplemental social security income ("SSI") under Title XVI of the Social Security Act.  This matter is before the court pursuant to 42 U.S.C. §1383(c)(3), 42 U.S.C. §405(g) and Local Rule 72.2(b).

Because the ALJ failed adequately to support her conclusion that D.L.M. did not have an impairment or combination of impairments that functionally equaled the severity of one of the listed impairments, I recommend that the final decision of the Commissioner be AFFIRMED IN PART and REVERSED AND REMANDED IN PART in accordance with this Report and Recommendation.

## II.    Procedural History

Marshall applied for SSI on behalf of her minor child, D.L.M., on August 29, 2013.  (Tr. 114-119).  The Social Security Administration denied Marshall's application initially and upon reconsideration.  (Tr. 78-80, 84-86)  Thereafter, an administrative law judge ("ALJ") presided over a hearing on September 16, 2015.  (Tr. 29-52)  The ALJ denied the claim on November 6, 2015.  (Tr. 11-28).  The appeals counsel declined review of that decision, rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 1-6)

## III.    Standard for Child Disability Claims

The standard for evaluating a child disability claim differs from that used for an adult's claim.  42 U.S.C. § 1382c(a)(3)(C); *see also Miller ex rel. Devine v. Comm'r of Soc. Sec*., 37 F. App'x 146, 147 (6th Cir. 2002).  A child is considered disabled if he has a "medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C).  To determine whether a child is disabled, the regulations prescribe a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At Step One, a child must not be engaged in "substantial gainful activity."  20 C.F.R. § 416.924(b). At Step Two, a child must suffer from a "severe impairment." 20 C.F.R. § 416.924(c).  At Step Three, disability will be found if a child has an impairment, or combination of impairments, that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1; 20 C.F.R. § 416.924(d).

To determine whether a child's impairment functionally equals the Listings, the Commissioner must assess the functional limitations caused by the impairment.  20 C.F.R. §

416.926a(a).  This done by evaluating how a child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for [oneself]; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairment results in "marked" limitations[1] in two domains, or an "extreme" limitation[2] in one domain, the impairments functionally equal the Listings and the child will be found disabled. 20 C.F.R. § 416.926a(d).

## IV.    The ALJ's Decision

The ALJ issued a decision on November 3, 2015, finding:

1.  D.L.M. was born on November 12, 2005.  Therefore, he was a school-age child on January 29, 2013, the date the application was filed, and is currently a school-age child.  (Tr. 17)

2.  D.L.M. has not engaged in substantial activity since July 29, 2013, the application date. (Tr. 17)

3.  D.L.M. has the following "severe" medical impairments:  attention deficit hyperactivity disorder (ADHD), Oppositional Defiant Disorder.  (Tr. 17)

4.  D.L.M. does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 17)

5.  D.L.M. does not have an impairment or combination of impairments that has functionally equaled the severity of one of the listed impairments.  (Tr. 17)

In determining functional equivalence, the ALJ individually evaluated D.L.M.'s abilities under all six domains of functioning and made the following findings:

A.  Acquiring and using information:  less than marked limitation

---

[1] A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." Id. "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." Id.

[2] An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation means "more than marked."  Id. "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." Id.

      B.  Attending and completing tasks:  marked limitation
      C.  Interacting and relating with others:  less than marked limitation
      D.  Moving about and manipulating objects:  no limitation
      E.  Caring for yourself (Self-care):  less than marked
      F.  Health and physical well-being:  no limitation

(Tr. 22-27)  Based on these findings, the ALJ determined that D.L.M. had not been under

a disability since July 29, 2013, the date the application was filed.  (Tr. 28)  Marshall

asserts that the ALJ failed adequately to support her conclusions regarding the domains

of acquiring and using information, interacting and relating to others, and caring for

yourself.  (ECF Doc. No. 12, Page ID# 512).

## V.      Relevant Evidence

### A.      School Records

Cleveland Public Schools issued an Individualized Education Program ("IEP") to D.L.M.

for the period of April 15, 2013, through April 14, 2014, when he was in first grade.  (Tr. 201-

22)  He scored a 1.7 grade level equivalent for reading comprehension, but scored below grade

level for reading decoding and spelling.  (Tr. 206, 207, 214)  The plan indicated that D.L.M.

would receive instruction outside the regular classroom for reading and math, as well as speech

language services.  (Tr. 208, 215)

The next IEP in the record is from D.L.M.'s third grade year.  (Tr. 348-61)  It

encompasses the period from March 2, 2015, through March 1, 2016.  (Tr. 348)  D.L.M. made

"significant progress" toward his math goal of adding two-digit addition problems and "some

progress" regarding two-digit subtraction.  (Tr. 350)  He did not meet his goal of recognizing the

first 300 Fry words (only recognizing 50 of 300).  (Id.)  It was noted that D.L.M. was a "hard

worker and a leader in the classroom."  (Id.)  Standardized tests revealed "significant weakness"

in the phonemic awareness and basis reading; math computation and problem solving; and

writing skills.  (Id.)

An October 29, 2015, IEP Progress Report noted that D.L.M. (then a fourth-grader) had made adequate progress toward all of his goals.  (Tr. 418-21)  His reading scores were still noted as needing urgent intervention.  (Tr. 421)  It was also noted that his reading skills were "comparable to an average first grader after the second month of school."  (Id.)

The school suspended D.L.M. on three separate occasions in 2014 and 2015 for fighting, pushing, and hitting.  (Tr. 164, 172, 362)  He was also suspended for three days in March 2014 for reasons that are not clear from the record.  (Tr. 162-63)

### B.  Medical Evidence

#### 1.  Treatment Records

On July 31, 2013, D.L.M. was referred to Beech Brook for defiant and destructive behavior (Tr. 227).  During the initial appointment, the plaintiff, Ms. Marshall (D.L.M.'S adoptive mother) related that D.L.M. had been born with a positive toxicology screen for cocaine (Tr. 229).  She reported destructive behavior such as:  fighting, breaking things, throwing things, and choking his puppy.  (Id.)  During a mental status exam, D.L.M. demonstrated an inability to focus and was "fidgety."  (Tr. 237)  He was diagnosed with Attention Deficit/Hyperactivity Disorder and Oppositional Defiant Disorder.  (Tr. 238)

On August 14, 2013, Marshall expressed concern that D.L.M.'s medication was not effective.  (Tr. 302)  She reported that D.L.M.'s aggression had increased and he was having difficulty concentrating and staying seated.  (Id.)  Although Marshall indicated that D.L.M. had been doing really well on medication she believed the medication had lost its efficacy.  (Tr. 303)  D.L.M. noted that she planned on speaking to Dr. Eppright about the medication in January 2014.  (Id.)

In January 2014, Dr. Eppright discontinued D.L.M.'s Adderall because it did not act long enough and prescribed Vyvanse as a replacement. (Tr. 307) In July 2014, Dr. Eppright increased the strength of the Vyvanse due to increases in D.L.M.'s impulsivity, distractibility, and hyperactivity. (Tr. 323) In July 2015, D.L.M. had increased ADHD symptoms but was not taking his medication on a regular basis. (Tr. 385) Dr. Eppright encouraged Marshall to ensure that D.L.M. took the medication on a regular basis. (Id.) He also added Clonidine for when the Vyvanse wears off. (Id.) That same month, a therapist noted that D.L.M. smothered his brother with a pillow while fighting, with his mother needing to intervene so his brother could breathe. (Tr. 399) D.L.M. denied an intent to hurt. (Id.) Dr. Eppright attributed D.L.M.'s aggression to the ADHD and encouraged daily administration of the medication. (Id.)

Dr. Eppright filled out a questionnaire on behalf of D.L.M. (Tr. 409-10) Dr. Eppright probably completed the questionnaire on or after July 28, 2015.[3] (Tr. 408) Dr. Eppright opined that D.L.M. had significant difficulty caring for himself; extreme difficulty attending to and completing tasks; and extreme difficulty acquiring and using information. (Tr. 409) Dr. Eppright stated that D.L.M. exhibited difficulties in the latter two categories in the school setting. (Id.)

## 2. Consultative Exam

In November 2013, D.L.M. and his mother attended a consultative examination with Dr. Faust. D.L.M. was nearly 8 years old and in the 2nd grade when Dr. Faust evaluated him. (Tr. 273-74) Dr. Faust found that D.L.M.'s responses "were complete" and found him to be "fairly articulate for his age." He also found him to have "no trouble expressing his thoughts and

---

[3] This conclusion is apparent based on the fact that counsel's letter to Dr. Eppright asking him to fill out the questionnaire was sent or delivered on July 28, 2015. (Tr. 408) Thus, Dr. Eppright would have had to fill out the questionnaire after receipt of that letter.

feelings in fairly articulate terms for his age." And he found "no evidence of receptive and expressive language disorders and he [did] not exhibit a phonological disorder." (Tr. 20, 276). D.L.M. also showed no problems understanding simple questions and complex directions. (Id.) Although an IQ test had not been ordered, Dr. Faust estimated that D.L.M. exhibited "average" intelligence. (Tr. 277) Dr. Faust did not specify whether D.L.M.'s abilities in any domains were "marked" or "extreme" but noted he likely had difficulty learning and retaining new information in a group setting due to his ADHD and oppositional defiant symptoms. (Tr. 278)

Shortly after, the examination by Dr. Faust, D.L.M. attended a speech evaluation with speech pathologist Kathryn Bartow. (Tr. 283-86) Ms. Bartow concluded that D.L.M. displayed moderately delayed receptive language skills and mild to moderately delayed total language skills. (Tr. 286)

### C.      Hearing Testimony

Marshall testified first at the hearing, with D.L.M. out of the room. (Tr. 31, 35) Marshall testified that D.M's aggression began around age three by breaking televisions and busting walls. (Tr. 35) She said she thought it was just terrible twos or threes, but that at age five D.L.M. started exhibiting more troubling violence such as abusing the dog and hurting his brother. (Tr. 36) At that point, D.L.M. was put on medication. (Id.) Marshall indicated that the medicine improved his symptoms. (Id.) Marshall indicated that, at that time of the hearing, D.L.M. took two medications for his behavioral problems. (Tr. 37, 47) She stated that the medications helped him focus but did not help the violent behaviors or his intellectual process. (Tr. 37, 47) Marshall indicated that D.L.M. is violent toward her, his older brother, and kids at school. (Tr. 40) However, she indicated that he does not exhibit aggression toward her other two foster children. (Tr. 40-41)

She stated that D.L.M. helped around the house by folding, cleaning, and learning to cook. (Tr. 42) She explained that he had trouble with math and reading. (Tr. 44) She indicated that he could read words but not sentences. (Tr. 44, 49) Marshall expressed fear that D.L.M. might use his medication as crutch and a lack of medicine as an excuse for bad behavior. (Tr. 45-46)

The ALJ also spoke to D.L.M. off the record. (Tr. 50, 52)

## VI. Law & Analysis

### A. Standard of Review

This court's review is limited to determining whether substantial evidence in the record supported the ALJ's findings of fact and whether the ALJ correctly applied the appropriate legal standards. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The court must also determine whether the Commissioner applied proper legal standards. If not, the court must reverse the Commissioner's decision, unless the error of law is harmless. *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

## B. Analysis

Marshall presents three arguments for review. First, she argues that the ALJ erred in finding that D.L.M. did not have marked impairments domains of (1) acquiring and using information, attending and completing tasks,[4] (2) interacting and relating with others, and (3) caring for yourself. ECF Doc. No. 12, Page ID# 512. Second, she contends that the ALJ improperly assigned little weight to D.L.M.'s treating physician, Dr. Eppright. Id. at Page ID# 520. Third, she argues that the ALJ erred in her credibility determination of D.L.M.'s mother's testimony. Id. at Page ID# 522.

---

[4] Plaintiff included the domain of attending and completing tasks in the *heading* of her Argument I, in which she argued the ALJ's decision lacked substantial evidence; but this was not included in her argument proper. After the Commissioner responded to this issue, plaintiff's reply clarified that she was not asserting an objection to the ALJ's conclusion that D.L.M.'s had marked limitations in the domain of attending and completing tasks. (ECF Doc. No. 15, Page ID# 554).

1.   **Whether Substantial Evidence Supports the ALJ's Determination that D.L.M. Was Not Markedly Limited in the Domains of (a) Acquiring and Using Information (b) Interacting and Relating to Others, and (c) Caring for Self.**

As discussed above, a child's disability is considered to functionally equal the disability Listings when he has a marked limitation in at least two out of six domains of functioning, or an extreme limitation in just one.  20 C.F.R. § 416.926a(a); *Elam ex rel. Golay v. Comm'r*, 348 F.3d 124, 127 (6th Cir. 2003).  A "marked" limitation is "more than moderate" and "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(a) & (e)(2).  The ALJ found that D.L.M. had no extreme limitations and only one marked limitation (attending to and completing tasks).  (Tr. 23-24)  Because only one marked limitation was found, D.L.M. did not functionally equal the disability Listings.  Marshall argues that D.L.M. also had marked limitations in the domains of (a) acquiring and using information and (b) interacting and relating to others; and (c) caring for self.  ECF Doc. No. 12, Page ID# 512-20.  The Commissioner counters that substantial evidence supports the ALJ's finding that D.L.M. had less than marked limitations in these domains.  ECF Doc. No. 14, Page ID# 537-42.

a.   **Acquiring and using information**

The acquiring and using information domain considers a child's ability to learn information and to think about and use the information. 20 C.F.R. § 416.926a(g); Social Security Ruling 09-3p, 2009 WL 396025.  A child must "be able to use language to think about the world and to understand others and express [himself]; e.g., to follow directions, ask for information, or explain something." 20 C.F.R. § 416.926a(g)(1) (ii). School records provide important information in assessing limitations in the domain of acquiring and using information. SSR 09–3p.  "Poor grades or inconsistent academic performance are among the more obvious indicators

of a limitation in this domain provided they result from a medically determinable mental or physical impairment(s)." Id. School records may reveal that mental or physical impairments interfere with the child's ability to acquire and use information, such as the following:

- Special education services, such as assignment of a personal aide who helps the child with classroom activities in a regular classroom, remedial or compensatory teaching methods for academic subjects, or placement in a self-contained classroom.

- Related services to help the child benefit from special education, such as occupational, physical, or speech/language therapy, or psychological and counseling services.

- Other accommodations made for the child's impairment(s), both inside and outside the classroom, such as front-row seating in the classroom, more time to take tests, having tests read to the student, or after-school tutoring.

Id. "The kind, level, and frequency of special education, related services, or other accommodations a child receives can provide helpful information about the severity of the child's impairment(s)." Id. The ALJ must also "consider evidence about the child's ability to learn and think from medical and other non-medical sources (including the child, if the child is old enough to provide such information)" and limitations are assessed in all settings, not just in school. Id. The regulations provide the following frame of reference for determining whether school-age children (6 to 12 years of age) are functioning typically for their age with respect to acquiring and using information:

- Learns to read, write, and do simple arithmetic.

- Becomes interested in new subjects and activities (for example, science experiments and stories from history).

- Demonstrates learning by producing oral and written projects, solving arithmetic problems, taking tests, doing group work, and entering into class discussions.

- Applies learning in daily activities at home and in the community (for example, reading street signs, telling time, and making change).

- Uses increasingly complex language (vocabulary and grammar) to share information, ask questions, express ideas, and respond to the opinions of others.

Id.

The ALJ found that D.L.M. had a less than marked limitation in the domain of acquiring and using information. (Tr. 23) The ALJ referred to D.L.M.'s first grade IEP for the period covering April 15, 2013, through April 14, 2014. (Tr. 23, 201-22) She noted that D.L.M. scored below grade level on the Kaufman Test of Education Achievement in mathematics, reading, and spelling. (Tr. 23, 206) She also noted that D.L.M.'s IEP included speech and language services. (Id.) However, the ALJ appears to have relied on the following to determine D.L.M. did not exhibit a marked limitation in this domain: that D.L.M. had "calmed down;" was "helpful;" had improved attention skills; finished and finished tasks. (Tr. 23) The ALJ also noted that D.L.M.'s speech therapy prognosis was good. (Tr. 23)

Marshall argues that the ALJ's analysis ignored important information. ECF Doc. No. 12, Page ID# 513-17. For example, Marshall asserts that the ALJ did not consider or explain the impact of D.L.M.'s third-grade IEP findings on this category. Id. at Page ID# 517. At that time, based on standardized and information assessments, school officials determined that D.L.M. continued "to demonstrate significant weakness in the following areas: phonemic awareness and basic reading skills, math computation and problem solving and writing skills." Id. citing (Tr. 350). Marshall also argues that despite giving great weight to the findings of the consultative physician, Dr. Faust, the ALJ made no mention of his findings that D.L.M. would "require more redirection to sustain focus to the task and given small segments of information to be able to cognitively process and learn didactic information due to his ODD and ADHD symptoms." Id. citing (Tr. 277-78). The Commissioner counters that, looking at the ALJ's decision as a whole, the ALJ discussed all of the evidence to which Marshall refers. ECF Doc. 14, Page ID# 537.

Here, Marshall has the better argument. The ALJ did not mention many of the details of Dr. Faust's opinion or the more recent IEP in regard to her analysis of the acquiring and using information domain, even though this evidence relates directly to this domain. Dr. Faust opined that despite D.L.M.'s ability to understand instruction and express himself during the examination he would "likely have difficulty learning and retaining new information in a group setting due to his ADHD symptoms." (Tr. 278) The ALJ did not discuss anywhere in the opinion the determination in the IEP that D.L.M. continued "to demonstrate significant weakness in the following areas: phonemic awareness and basic reading skills, math computation and problem solving and writing skills." (Tr. 350). Because the ALJ did not mention this evidence in regard to this domain, it is unclear whether the ALJ ignored this information or whether she was aware of it but discounted it for some reason.

In concluding that D.L.M. did not have marked limitations in the domain of acquiring and using information, the ALJ failed to build an accurate and logical bridge between the evidence and the result. Thus, the undersigned is "unable to discern whether the ALJ considered these pieces of their evidence in their entirety or ignored the portions reflecting that plaintiff's functioning was more limited than that found by the ALJ." *Young v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-872, 2014 WL 1788181, at *7 (N.D. Ohio May 5, 2014) ("A district court cannot uphold an ALJ's decision, even if there is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.") listing cases; See also *Fagin ex rel. B.P. v. Comm'r of Soc. Sec.*, No. 1:10-CV-813, 2012 WL 213801, at *6 (S.D. Ohio Jan. 24, 2012), *report and recommendation adopted sub nom. Fagin v. Comm'r of Soc. Sec.*, No. 1:10CV813, 2012 WL

481787 (S.D. Ohio Feb. 14, 2012) (reversing the decision of the Commission for the ALJ's failure to consider evidence relating to this domain).

Moreover, the ALJ's reliance on D.L.M.'s "improvement" does not constitute substantial evidence to support her conclusion on this domain because the ALJ did not compare D.L.M.'s functioning to similar age children.  *Sewell ex rel. HMC v. Comm'r of Soc. Sec.*, No. 10-12520, 2011 WL 3566471, at *9 (E.D. Mich. July 20, 2011), *report and recommendation adopted sub nom. Sewell v. Comm'r of Soc. Sec.*, No. 10-12520, 2011 WL 3566401 (E.D. Mich. Aug. 12, 2011); *See also Williams v. Astrue,* 2011 WL 1935830 (N.D.Ill.2011).  "The regulations governing an initial determination of childhood disability do not ask an ALJ to consider improvement but rather to 'compare your functioning to the typical functioning of children your age who do not have impairments.'" *Id.* at *9; Williams, at *11, quoting, 20 C.F.R. § 416.926a(f)(1); see also SSR 09–2p ("The critical element in evaluating the severity of a child's limitations is how appropriately, effectively, and independently the child performs age-appropriate activities.").  Thus, the ALJ decision should be reversed for failure to compare the claimant to non-impaired children his age in accordance with the regulations.

The ALJ's determination that D.L.M. had less than marked limitations in acquiring and using information was not supported by substantial evidence.  This was not harmless error.  Had the ALJ concluded that D.L.M. was markedly limited in this domain, the application for SSI benefits would have had to be approved, given the finding that he was undisputedly markedly limited in another domain.

### b.    Interacting and Relating to Others

Marshall also argues that D.L.M. exhibited marked limitations in the domain of interacting and relating to others.  ECF Doc. No. 12, Page ID# 517-19.  Regulations describing

this domain provide that children should be able to effectively communicate with others through expressions, gestures, and actions. SSR 09-5P, 2009 WL 396026 (S.S.A. Feb. 17, 2009). The child should also be able to form and sustain relationships over time. Id.

Marshall argues that evidence that D.L.M. choked his dog, tried to smother his brother, and got suspended from school for fighting, should outweigh the evidence cited by the ALJ that D.L.M. was a "hard worker and a leader in the classroom." Id. There is no doubt that the evidence shows limitations in D.L.M.'s ability to interact and related to others. The question is whether the degree of limitation is "marked" (or more than moderate). This court's review is limited to determining whether substantial evidence in the records supports the ALJ's finding that it did not. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003); *See also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 ("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decision makers can go either way").

The ALJ acknowledged D.L.M.'s destructive behavior and O.D.D. diagnosis. (Tr. 19, 25) However, the ALJ determined that D.L.M. did not exhibit a marked limitation in this domain because of: (1) his ability to communicate with and interact with Dr. Faust as well as Dr. Faust's opinion that D.L.M. could engage with people he did not know in a generally cooperative manner; (2) various references in his 2013 and 2015 IEPs that he was "helpful," a "hard worker," and a "leader in the classroom;" and (3) the two state agency consultants who opined the same. (Tr. 19, 21, 25, 59, 72, 206, 279, 350) The ALJ provided substantial evidence for her conclusion regarding this domain by citing these facts and opinions.[5] *See Martin v. Comm'r of Soc. Sec.*,

---

[5] When supported by substantial evidence, the ALJ's opinion is not subject to reversal even if there exists substantial evidence in the record to the contrary. See *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion.") (internal citations and quotations omitted); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are

No. 3:13CV1166, 2014 WL 2114690, at *3 (N.D. Ohio May 20, 2014)(finding that two state agency opinions and school records indicating improvement in obeying school rules constituted substantial evidence for a less than marked limitation in this domain, despite testimony about problems and comments from the consulting psychologist regarding deficient social and emotional patterns).

<strong>c.  Care for Self</strong>

This domain considers how well a child maintains a healthy emotional and physical state. 20 C.F.R. § 416.926a(k); Social Security Ruling 09-7p. School age children in this domain should be independent in my daily activities such as dressing and bathing, although they may still sometimes need to be reminded to do these activates routinely.  Id. School age children in this domain should begin to recognize that they are competent in doing some activities and that they have difficulty with others.  Id.  Furthermore, school age children in this domain should be able to identify circumstances where they feel good about themselves and when they feel bad, and begin to develop understanding of what is right and wrong and what is acceptable and unacceptable behavior.  Id.  Furthermore, they should begin to demonstrate consistent control over their behavior, and should be able to avoid behaviors that are unsafe or otherwise not good for them as well as beginning to imitate more of the behavior of adults they know.  Id.

The ALJ found a less than marked limitation in D.L.M.'s ability to care for himself.  (Tr. 27)  The ALJ relied upon Marshall's testimony that D.L.M. could care for himself when

---

reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); see also *Her v. Comm'r of Soc. Sec.*, 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."  See *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen v. Bowen*, 800 F.2d 535,545 (6th Cir. 1986) (citing Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984).

reminded of what to do as well as upon the consultative examiner's notes that D.L.M. slept alone, was independent in toileting, and had no difficulty asking for help when needed. (Id.) The ALJ also noted the 2015 IEP that D.L.M. "no longer crie[d] when classwork was challenging," but instead "verbalize[d] that he did not understand the concept, skill or expectation" (Tr. 19, 350). And, gave great weight to the consultative examiners who found the same. (Tr. 21, 59, 72) Thus, the ALJ had substantial evidence to support her determination. Marshall's argument on this conclusion is unavailing.

### 2.    Dr. Eppright

Next, Marshall argues that the ALJ improperly placed little weight on the opinion of D.L.M.'s treating physician, Dr. Eppright. ECF Doc. No. 12, Page ID# 520. In essence, she argues that the ALJ violated the treating physician rule. The rule directs ALJs to assign controlling weight to a treating source's medical opinion provided it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record...." 20 C.F.R. § 404.1527(d)(2). If the ALJ does not give the treating source opinion controlling weight, the ALJ must articulate "good reasons" for that decision. Id. "If the ALJ fails to give good reasons for rejecting the opinion of a treating physician, the error is reversible and requires a remand for further proceedings, unless the error is harmless." *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112 (6th Cir. 2010) *citing Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir.2004).

Dr. Eppright opined that D.L.M. had "extreme" difficulty with acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself. (Tr. 409) Dr. Eppright listed D.L.M.'s ADHD diagnosis as the reason for these extreme limitations. (Tr. 408-09) The ALJ assigned "little weight" to the opinion for the

following reasons, "Dr. [Eppright] gave no explanation for these opinions, other than the fact at the claimant had been diagnosed with adhd." (Tr. 21)

The ALJ's summary dismissal of the treating source's opinions does not satisfy the "good reasons" requirement. This conclusion is buttressed by the fact that although the ALJ asserted that Dr. Eppright provided insufficient explanation for this opinion, Eppright's opinions appear to be supported by his treatment notes. This was not harmless error. Had the ALJ given Dr. Eppright's opinions greater weight or controlling weight, D.L.M.'s application or SSI benefits would likely have been approved. The ALJ's violation of the treating source rule requires reversal.[6]

### 3. Credibility

Marshall, relying on SSR 96-7p, argues that the ALJ erred in not making any credibility determination of D.L.M.'s mother's testimony. ECF Doc. No. 12, Page ID# 522. The Commissioner counters that SSR 96-7p applies to a claimant's testimony about their *own* symptoms and that Marshall's statements would be evaluated as a non-medical source and, thus, a credibility finding would not be required. See 20 CFR § 416.913(d)(4). The Commissioner is correct. Under SSR 96-7p, the requirement to make a credibility determination in regard to statements of the individual claiming to be disabled. SSR 96-7P, 1996 WL 374186 (S.S.A. July 2, 1996)("whenever the in*dividual's* statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the *individual's* statements based on a

---

[6] The court finds that the ALJ's failure to follow the good reasons rule was not harmless error. Although under a harmless error analysis this court could look at other areas of the ALJ's decision to determine if the ALJ met the goal of the rule by analyzing each functional domain and, thus, providing sufficient explanation for her reasons for rejecting Dr. Eppright's opinion, the court could not do so here because it has already found that the ALJ did not properly analyze one of the functional domains.

consideration of the entire case record.")  However, the regulations do not address a situation

such as this, when the minor claimant does not testify and the only statements about the effects

of the symptoms come from the parent.

Even assuming for the sake of discussion that SSR 96-7p applies when family members

testify on behalf of children, the ALJ met the requirements of the regulation.  The ALJ found that

statements concerning the intensity, persistence and limiting effects of D.L.M.'s symptoms did

not support a finding of disability.  (Tr. 18-19)  Here, other than the medical records, the only

statements concerning the intensity, persistence and limiting effects of D.L.M.'s symptoms came

from Marshall.  In fact, the ALJ recited Marshall's testimony and then stated "considering the

evidence of record . . . the statements . . . do not support a finding of disability for the reasons

explained below."  Therefore, it can be inferred that the ALJ's credibility determination referred

to Marshall's statements.

Nonetheless, "any ostensible error committed by the ALJ is harmless as she fully

considered the statements made by plaintiff's mother in finding that plaintiff was not disabled."

*Vanselow v. Comm'r of Soc. Sec.,* No. 1:11-CV-616, 2012 WL 3678635, at *14 (S.D. Ohio Aug.

24, 2012), *report and recommendation adopted,* No. 1:11-CV-616, 2012 WL 5240810 (S.D.

Ohio Oct. 19, 2012).  The ALJ made note of Marshall's testimony concerning D.L.M.'s

communication and reading difficulties, as well as problems getting along with others.  (Tr. 18)

The ALJ further noted Marshall's allegation that D.L.M. could not tie his shoes, bathe or groom

without help, sit still, and needed to be told repeatedly what to do to stay on task.  (Id.)  The ALJ

addressed these issues throughout the decision and particularly in the discussion of each

functional domain.  For example, in the caring for yourself domain, the ALJ acknowledged

Marshall's reports about D.L.M.'s ability to care for himself but gave weight to the consultative

examiner's finding that D.L.M. was independent in toileting, could sleep alone, and had no difficulty asking for help when needed.  (Tr. 27, 279)  Moreover, the ALJ found that needing reminders to complete day-to-day activities routinely is not incompatible with a less than marked limitation in the ability to care for oneself.  (Tr. 26)  The ALJ also made note of Marshall's reports of disruptive behavior and talking back, but noted that school records described him as a hard worker and leader in the classroom with a genuine interest in helping people and that he had the ability to interact with unknown people.  (Tr. 25)  The ALJ addressed D.L.M.'s communication difficulties and found that the evidence showed he made adequate process in speech therapy.  (Tr. 23)  These examples show that the ALJ fully considered Marshall's testimony and addressed it throughout the disability determination.

For all of the above reasons, there is no compelling reason to disturb the ALJ's credibility finding and Marshall's argument that the "ALJ erred in not making any credibility determination regarding [D.L.M.]'s mother's testimony should be overruled.[7]

## VII.    Recommendations

The Commissioner's determinations concerning D.L.M.'s lack of marked limitations in the domains of interacting and relating to others and caring for one's self were supported by substantial evidence and should be affirmed.  The ALJ evaluated and handled the testimonial evidence of Plaintiff Marcia Marshall in conformance with applicable procedures.  The ALJ failed to appropriately document her reason for discounting the opinions of the treating source and failed to support her conclusion on the domain of acquiring and using information with substantial evidence.  I recommend that the final decision of the Commissioner be AFFIRMED

---

[7] Notably, Marshall did not make a substantial evidence argument regarding credibility, instead she argued that the ALJ simply did not make a creditability determination concerning Marshall's testimony.

IN PART and REVERSED AND REMANDED IN PART in accordance with this Report and

Recommendation.

Dated: November 1, 2017

Thomas M. Parker
United States Magistrate Judge

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).